**THE CAVANAGH LAW FIRM**
A Professional Association
1850 NORTH CENTRAL AVENUE
SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000
www.cavanaghlaw.com

William M. Demlong (SBN 012458)
wdemlong@cavanaghlaw.com
John K. Wittwer (SBN 025035)
jwittwer@cavanaghlaw.com
Tel: (602) 322-4000
Fax: (602) 322-4101
Attorneys for Defendants Allen Rosenbach
and ACR Solutions Group

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Benyamin Avrahami, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> Celia Clark, *et al.*, <br><br> Defendants. | NO. CV-19-4631-PHX-SPL <br><br> **DEFENDANTS ALLEN ROSENBACH AND ACR SOLUTIONS GROUP'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF PERSONAL JURISDICTION AND MOTION TO DISMISS AZ RICO CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br> **(Oral Argument Requested)** |

Defendants Allen Rosenbach[1] and ACR Solutions Group, Inc.[2] (Rosenbach and ACR are collectively referred to herein as "ACR" unless individually specified) hereby respectfully move to dismiss all claims against ACR, pursuant to Fed.R.Civ.P. Rules 12(b)(1), 12(b)(2), 12(b)(6), as the Complaint fails to state a claim as to ACR, the Court lacks subject matter jurisdiction over Plaintiff's two state-law RICO claims, and assuming the RICO actions fail as

---

[1] Misnamed in the Complaint "Alan Rosenbach".

[2] Misnamed in the Complaint "ACR Solutions Group".

to ACR, this Court would not have personal jurisdiction over ACR.[3] Filed herewith is ACR's counsel's certification in compliance with LRCiv 12.1(c).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

#### A. OVERVIEW

Plaintiffs allege 13 causes of action against a group of 11 Defendants based on the formation and management of captive insurance companies. This case arises out of the fact that the Internal Revenue Service ("IRS") disallowed Plaintiff Avrahamis' specific tax deductions for 2009 and 2010. Doc. 1 ¶ 117. The fact that deductions were under audit arose in March of 2012. *Id.* ¶ 111. The Plaintiffs were advised in May of 2013 "that Feedback was not a valid insurance company and determining the amounts characterized as insurance premiums were income to Feedback." *Id.* ¶ 111. Ultimately, the IRS and the Plaintiffs settled the issues raised in the Feedback matter through a stipulation of settled issues on March 12, 2015. *Id.* ¶ 118.

#### B. CAPTIVE INSURANCE COMPANIES

The provision of tax law that provides the set off of premiums for tax purposes is IRC section 831(b) commonly known as the "small insurance company exclusion." Captive insurance companies that claim this tax benefit are commonly referred to as 831(b) captives in the industry. Captives are not fraudulent *per se* or a scam on their face as suggested by the Complaint. Doc. 1 ¶114. The Supreme Court introduced concepts of risk shifting and use of an insurance platform for risk distribution in *Helvering v. Le Gierse*, 312 U.S. 531 (1941). Courts have confirmed captives are a legal method to accomplish risk shifting which could also allow for IRC tax benefits. *See, e.g., Humana Inc. v. Commissioner*, 881 F.2d 247 (6th Cir. 1989).

#### C. DEFENDANTS ROSENBACH AND ACR

---

[3] ACR also joins in and adopts and incorporates by reference the motions to dismiss/strike and joinders previously filed by Defendants Clark and Clark & Gentry P.L.L.C. [**Doc. 28**], Hiller and Fennemore Craig, P.C. [**Doc. 31**], John Garcia, as Personal Representative for the Estate Of Craig McEntee and McEntee & Associates P.C. [**Doc. 36**], and RMS Solutions, Inc. [**Doc. 43**]. The arguments asserted in those motions are equally applicable to ACR.

2

Rosenbach is a resident and citizen of Florida. *See* Decl. of A. Rosenbach, Exhibit A hereto. He does not reside in, nor is he a citizen of, Arizona. *Id.* He was, at all relevant times to this action, an actuary and Fellow of the Casualty Actuarial Society (FCAS). *Id.* Rosenbach was, at all relevant times to this action, Founder and President of ACR Solutions Group, Inc. *Id.* ACR was, at all relevant times to this action, an independent, actuarial consulting firm. *Id.* ACR is incorporated under the laws of Florida with its principal place of business in Florida. *Id.* ACR has never been registered to do business in Arizona, maintained a business in Arizona, had a registered agent in Arizona, maintained any offices or facilities in Arizona, or had any employees in Arizona. *Id.* ACR did not seek out or directly solicit the Plaintiffs to provide any service to specifically the Plaintiffs. *Id.*

According to the Complaint, ACR was asked by the Clark Defendants to provide actuarial reports which were provided by email on or about December 31, 2009 and December 20, 2010. Doc. 1 ¶108. The full extent of this transaction took place between ACR in Florida and the Clark Defendants in New York. Doc. 1 at ¶¶ 14-15, 20-21.

### D. FACTUAL ALLEGATIONS SPECIFIC TO ACR

The Complaint uses the generic term "Defendants" when referring to the eleven Defendants. *See generally* Doc. 1. The Complaint lacks specific reference to ACR's actions when pleading the issues of fraud, statements and/or omissions, duty, action, inaction, knowledge, and/or motivation, simply grouping ACR with the actions of all eleven Defendants. The Complaint, by grouping the Defendants, blurs the lines of alleged actions by each of the Defendants and their respected professions. Doc. 1 at ¶¶ 49-52. ACR did not seek out or directly solicit the Plaintiffs to provide any service to specifically the Plaintiffs. *See* Ex. A. Plaintiffs desired to establish a captive and approached others besides ACR to meet this goal. *Id.* ¶51.

The factual allegations specific to ACR are that "[f]rom 2009 onwards, Clark hired Rosenbach and ACR to price Feedback's policies . . . " and that "actuarial services by ACR, were periodically billed by Clark to the Avrahamis." Doc. 1 ¶¶ 53, 61. "To determine the premiums, Rosenbach reviewed various documents" and "then developed his own pricing

3

model for the products." *Id.* ¶ 61; *see also id.* ¶¶ 63-77 (alleging ACR developed pricing for Feedback policies); *id.* ¶¶ 86-87 (alleging ACR developed pricing for Pan American policies). Plaintiffs allege, however, "Rosenbach was not an independent actuary: out of some 50-80 premium estimates he prepared in 2009 and 2010, most, if not all, were for Clark's clients." *Id.* ¶ 61. It is alleged "the narrative sections of [Rosenbach's] actuarial reports were, in whole or substantial part, a direct cut and paste of the report that RMS had submitted in 2008." *Id.* ¶ 61. "Rosenbach and ACR just set the premiums at the level that Clark insisted upon . . . ." *Id.* ¶ 61; *see also id.* ¶ 77 ("Rosenbach calculated these premiums to hit a predetermined 'target' set for him by Clark. . . . The material fact that Rosenbach was 'backing into' the premiums rather than making independent actuarial calculations was never disclosed to Plaintiffs."). It is alleged "Rosenbach falsely represented that this substantial difference in pricing [*i.e.,* the commercial terrorism premiums cost less than 1% of the premiums paid to Pan American for terrorism coverage] was justified by linking Pan American's premium price to the unique coverage Pan American offered: chemical and biological coverage." *Id.* ¶ 87. ACR allegedly "sent emails to Clark containing mis-representations and omissions regarding Feedback policy pricing." *Id.* ¶ 108. ACR sent actuarial reports by email on or about 12/31/2009 and 12/20/2010. *Id.* ¶ 108.

Assuming the allegations are accurate, the Complaint fails to state ACR's work involved any tax-related services or recommendations, let alone that such work was audited or that any tax liability was directly incurred by ACR's non-existent tax work. *See generally* Doc. 1.

With regard to the "RICO and Arizona RICO" allegations, which are outlined in 43 paragraphs (Doc. 1 ¶¶ 158-200), the only ACR-specific allegations are limited to a subsection of a single paragraph. Doc. 1 at ¶ 174(e). The single paragraph alleges that ACR knew its reports were being used to create the false impression that captives were actuarially sound when, in fact, they were not. *Id.* ¶ 174(e). "In addition, ACR and Rosenbach were not independent. During the timeframe at issue, many, and in some years, almost all of ACR and Rosenbach's work came from Clark." *Id.* ¶ 174(e). At most, paragraph 174(e) is suggesting is that ACR knew other Defendants used ACR's reports for an improper purpose. There is no allegation that ACR

4

used or directed the use of any actuarial work for an improper purpose. There is no allegation that ACR gave tax advice or that ACR was a "promoter" of any tax strategies. There is no explanation of how the mere receipt of work from a single source could create any liability.

The Complaint alleges 13 counts against ACR. As established below, each of these claims alleged against ACR are legally defective and, thus, fail to state a claim upon which relief can be granted. Further, there is no subject matter jurisdiction over the State-law RICO claims, and if the RICO claims fail against ACR, there is no personal jurisdiction over ACR.

## II. ARGUMENT – FAILURE TO STATE A CLAIM

### A. FAILURE TO STATE *ANY* CLAIM AGAINST ACR

This Motion fully incorporates the applicable law, and arguments in the Fennemore, Clark, McEntee, and RMS Motions [Docs. 28, 31, 36, and 43], while herein highlighting the applicability to the fact pattern associated with ACR's alleged actions.

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). For Plaintiffs to successfully defend a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, a complaint should be dismissed where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In this case, the allegations related to ACR do not state a cause of action applicable to ACR. The 138-page Complaint is full of conclusions and unreasonable inferences as it relates to ACR. While the long Complaint outlines facts reported as adjudicated conclusions of the tax court with specific reference even to Judge Holmes, none of those adjudicated facts suggest

ACR did anything except calculate premiums. Doc. 1 ¶ 119. The Complaint does not lay out factual allegations as to ACR that meet the elements of even general negligence. Assuming that ACR produced inaccurate actuarial reports 8 or more years ago to Clark, there is no factual allegation that the reports as drafted were relied upon for tax advice, made faulty for a devious, intentional purpose, or that they led to an injury. The Complaint is simply void of those allegations even if the Court broadly interprets the statement in paragraph 174(e) that states "ACR knew its reports were being used to create the false impression that captives[4] were actuarially sound when, in fact, they were not." Rather, the Complaint alleges "premiums (calculated by Rosenbach in accordance with the guidelines given by Clark) were 'utterly unreasonable.'" Doc. 1 ¶ 128. Plaintiffs assert "*[t]ax professionals* like Defendants ***knew or should have known*** that . . . features in Pan American's structure and operations would disqualify it as an insurance company for income tax purposes," but the Complaint does not (and cannot) allege Rosenbach or ACR are "tax professionals" or performed any tax services. Doc. 1 ¶ 126 (emphasis added).

### B.  ALL FRAUD BASED CLAIMS FAIL AS TO ACR

Additionally, Plaintiffs must meet the heightened pleading requirements under Rule 9(b), Fed.R.Civ.P., for each claim grounded in fraud (Counts I-V, VII-IX, XI-XIII). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Where the conduct in the complaint is "grounded in fraud," the heightened pleading standard applies. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (where plaintiffs allege "a unified course of fraudulent conduct and rely entirely on that course of conduct" then "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

"The plaintiff must set forth what is false or misleading about a statement, and why it is

---

[4] For the purposes of this motion it is assumed "that captives" refers to the specific captives related to the Plaintiff and not captive insurance as a whole. Captives are a legal structure that have been upheld by the courts as legally and actuarially sound insurance structures.

false." *Id.* at 1106 (*citing Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir.1994)); *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 (D. Ariz. 2012) (finding fraud was not plead with particularity where "the second amended complaint never identifies who made them, when they were made, where they were made, or how they were made."). Moreover, Rule 9(b) prohibits the use of group pleading – the practice of attributing fraud to Defendants as a collective group rather than individually. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (*citing Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D.Fla.1998)). This impermissible type of pleading is throughout Plaintiffs' Complaint.

The Plaintiffs fail to identify the who, what, when, where, and how of the fraud as it relates to ACR. The sole paragraph as to ACR alleges it knew that its actuarial reports contained material misrepresentations and omissions. Doc. 1 ¶ 174(e). This is a conclusory statement of fact that does not give ACR enough specific circumstances to be on notice of what the material misrepresentations and omissions are to be able to defend against the charge. There is no allegation ACR provided, authorized, created, implemented, directed, or participated in any way in any tax-related professional services.  Given the lack of specific factual allegations, the Court should find that a *plausible* cause of action has not been pled, as ACR's reports do not form the basis for any of the allegations alleged in the Complaint.

### C. PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

Plaintiffs allege a violation of the federal RICO statute (18 U.S.C. § 1962(c)), conspiracy to violate federal RICO (18 U.S.C. § 1962(d)), violation of Arizona's RICO statute (A.R.S. §13-2312), and conspiracy to violate Arizona RICO (A.R.S. §13-2312). Federal interpretation guides the interpretation of Arizona state RICO claims. *Rosier v. First Fin. Capital Corp.*, 889 P.2d 11, 13-15 (Ariz. App. 1994). To recover on a RICO claim, Plaintiffs must allege: (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Other circuits have articulated that the heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO cases to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). The Complaint fails on all elements of a civil RICO claim.

**Conduct**. RICO (18 U.S.C. § 1962) outlaws four types of activities. The Plaintiffs' allegations focus on Section 1962(c) (prohibiting a person from conducting the affairs of an enterprise through a pattern of racketeering) and Section 1962(d) (prohibiting a person from conspiring to violate §§ 1962(a), (b), or (c). Plaintiffs' RICO claims should be dismissed because they have not been pled with particularity and lack sufficient facts to establish that ACR conducted an act that by its nature would be unlawful. Doc. 1 ¶¶ 61,108.

**Enterprise**. Plaintiffs allege no facts to support an "enterprise" in which ACR was involved. The Supreme Court held an association-in-fact enterprise under RICO must have some structure but, relying on both *United States v. Turkette,* 452 U.S. 576 (1981) and the plain language of RICO, identified only three required structural features: (1) "a purpose"; (2) "relationships among those associated with the enterprise"; and (3) "longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. at 946-47 (2009). Even if a general purpose and relationship could be established amongst other Defendants, there is no allegation of any longevity or continued actions by ACR. Doc. 1 ¶¶ 61, 108. Section 1962(c) requires a defendant "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). This means a defendant "must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). A defendant must "participate in the operation or management of the enterprise." *Id.* at 185. ACR is alleged to have provided reports in 2009-2010. Even assuming, *arguendo*, the reports were defective, this is insufficient to show direction, operation, or management of an enterprise.

**Pattern**. A "`pattern'... requires at least two acts of racketeering activity." 18 U.S.C. §

1961(5); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). The sole allegation as to ACR is calculation of premiums. That singular act does not constitute a pattern. There is no allegation ACR participated in any tax-related professional services. There is no allegation ACR drafted the insurance policies or was involved in claims. Further, since ACR is not alleged to have conducted any complained-of activity since 2010, the pattern element fails.

**Racketeering**. "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." *See, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The Complaint alleges no such activity on the part of ACR. The RICO claims fail and must be dismissed.

### D.     BREACH OF FIDUCIARY DUTY CLAIM FAILS AS TO ACR

Count V alleges breach of fiduciary duty. The Complaint is completely devoid of any allegations to support a finding of a fiduciary relationship between the Plaintiffs and ACR. "A fiduciary relationship has been described as something approximating business agency, professional relationship, or family tie compelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise." *Taeger v. Catholic Family & Cmty. Servs.*, 196 Ariz. 285, 290, ¶ 11, 995 P.2d 721, 726 (App. 1999). Again, ACR was engaged by the Clark Defendants in 2009. ACR had no relationship and no privity with Plaintiffs. There was no fiduciary duty on the part of ACR. This Count fails as to ACR.

### E.     NEGLIGENCE CLAIM FAILS AS TO ACR

The Plaintiffs allege under Count VI "Negligence/Professional Negligence" that a duty arises out of the applicable standards of care. *Id.* ¶¶ 261-263. To establish a claim for negligence, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach of that standard; (3) a casual connection between the breach and the injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). The Complaint fails to allege what standard of care would be applicable to ACR, how ACR has a duty to Plaintiffs, or how ACR breached any duty to Plaintiffs. The Plaintiffs lump

all Defendants together without identifying who owes Plaintiff what duty, and how that duty was violated by each Defendant. Count VI should be dismissed.

### F.   NEGLIGENT MISREPRESENTATION CLAIM FAILS AS TO ACR

Count VII asserts negligent misrepresentation. The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333, ¶ 30, n. 7, 340 P.3d 405, 412 (App. 2014). Once again, Plaintiff's Complaint lumps all Defendants together and fails to identify which Defendants make which representations. As for ACR, there is no specific tax-related representation that is alleged. Further, there is no allegation that the Plaintiffs relied on tax-related information supplied to them by ACR. This is because this event never happened. This Count fails as to ACR.

### G.   DISGORGEMENT AND RESCISSION ARE NOT CLAIMS

Count VIII is for "disgorgement" and Count IX is for "rescission." Both are merely remedies, not separate causes of action. *Gilbert Unified Sch. Dist. v. CrossPointe LLC*, No. CV 11-00510-PHX-NVW, 2011 WL 6153610, at *17 (D. Ariz. 12/9/2011) (rescission is a remedy, not a cause of action); *NWM Capital LLC v. Scharfman*, 144 A.D.3d 414, 415, 41 N.Y.S.3d 471, 473 (N.Y.App. 2016) (same for disgorgement). These Counts should be dismissed.

### H.   BREACH OF GOOD FAITH FAIR DEALING FAILS AS TO ACR

While a covenant of good faith and fair dealing is implied in every contract (*Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, ¶ 28, 214 P.3d 415, 421 (App. 2009), the Complaint does not allege facts that the Plaintiffs had a contract for services with the ACR. *See generally* Doc. 1. Count X does not reference ACR. *Id.* ¶¶ 286-295. The Complaint alleges *Clark* retained ACR. *Id.* ¶ 61. Plaintiff does not allege that ACR owed or breached any of the contractual provisions listed within the breach of contract claim. This claim fails.

### I. AIDING AND ABETTING AND CIVIL CONSPIRACY ARE NOT INDEPENDENT CLAIMS

Counts IV and XIII assert "conspiracy" as separate claims. Count XII asserts "aiding and abetting" as a separate claim. Neither conspiracy nor aiding and abetting are independent causes of action. Rather, they are a means to impose tort liability upon someone who did not commit the tort but facilitated it in some way. *Caruthers v. Underhill*, 230 Ariz. 513, 526, ¶ 54, 287 P.3d 807, 820 (App. 2012) ("Both aiding and abetting and conspiracy require, as an essential element, the commission of a tort"). "There is no such thing as a civil action for conspiracy…" *Perry v. Apache Junction Elem. Sch. Dist. No. 43 Bd. of Trustees*, 20 Ariz. App. 561, 564, 514 P.2d 514, 517 (1973) (*citing Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966)). Therefore, these claims should be dismissed or stricken.

### J. ALL CLAIMS ARE TIME-BARRED AS TO ACR

Finally, the statute of limitations has expired as to all conduct by ACR. The last action by ACR alleged in this Complaint was on or about December 20, 2010. Doc. 1 at ¶ 108. At the latest, by May 2013, more than six years prior to the filing of the pleadings (07/03/19), Plaintiffs were on notice that the IRS determined Feedback was not a valid insurance company and that "the amounts characterized as insurance premiums" were income to Feedback. *Id.* ¶ 111. ACR's last act allegedly occurred more than eight (8) years prior to the filing of this Complaint and more than six (6) years after formal action by the federal government. *Id.* ¶¶ 108-111. Plaintiffs failed to allege any specific actions of ACR that would toll, continue, or support equitable tolling of the statute of limitations. *Id.* ¶¶ 201-214. Even the longest of any potentially applicable statutes of limitations in this case, (six years under A.R.S. § 12-548 – which ACR denies applies to it), had far expired related to ACR actions prior to the initiation of this action. Plaintiff should have been on notice of its claims after receiving the IRS notice regarding Feedback in March of 2015. *Id.* ¶¶ 61, 118. All claims as to ACR are time-barred.

### III. NO SUBJECT MATTER JURSIDICTION OVER ARIZONA RICO CLAIMS

The Arizona RICO claims alleged in Counts III and IV are specifically alleged to arise

11

out of A.R.S. §§12-1312, 13-2301, and 13-2314.04. Doc. 1 ¶¶ 236, 241, 242, 245, 249, 250 & 252. Arizona's RICO explicitly requires a plaintiff who files a civil RICO claim to serve a copy of the complaint on the Arizona Attorney General within 30 days of filing suit. A.R.S. § 13-2314.04(H). "This requirement is jurisdictional." *Id.* Second, a complaint filed under Arizona's RICO statute must be verified. A.R.S. § 13-2314.04(O). The Complaint does not comply with the statutes. The Court lacks subject matter jurisdiction over Counts III and IV and they should be dismissed. ACR joins in Defendants Clark's Motion to Strike Count IV as duplicative.

## IV. PERSONAL JURISDICTIONAL GROUNDS FOR DISMISSAL

General jurisdiction does not exist as to Rosenbach or ACR as the Plaintiffs do not and cannot allege facts to establish Rosenbach or ACR are "at home" in Arizona. There is no basis for specific jurisdiction over Rosenbach or ACR in this case, either, because any suit-related conduct by Rosenbach or ACR does not create a substantial connection with the State. As set forth above, the Plaintiffs' RICO claims are not pled sufficiently, nor do the allegations establish that any of Rosenbach's or ACR's actions constituted racketeering activity under RICO. Accordingly, the claims against Rosenbach or ACR should be dismissed for lack of personal jurisdiction if the "as to one as to all" jurisdiction under RICO fails as to ACR.

When personal jurisdiction is challenged, plaintiff has the burden to show that jurisdiction exists. *Davis v. American Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). The Court must determine whether Plaintiffs make a prima facie showing of personal jurisdiction. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). A federal court may exercise jurisdiction over a foreign defendant only when the forum state's long-arm statute confers jurisdiction and the exercise of jurisdiction comports with federal due process requirements. *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990). As the Arizona long-arm statute extends to the outer limits of the due process, the jurisdictional analysis in Arizona boils down to federal due process. Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).

In all cases involving a non-resident defendant, due process requires that the defendants

have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2848 (2011). Here, Plaintiffs do not specify the theory under which they believe ACR is subject to personal jurisdiction in Arizona. Plaintiffs' Complaint lacks any suggestion that ACR took specific action in Arizona related to the subject incident. More specifically, the Complaint says that the only actions taken by ACR were emails and reports sent to the New York-based Clark Defendants. The Court lacks both general and specific jurisdiction and, therefore, the claims against Rosenbach and ACR must be dismissed.

### A.   ACR IS NOT SUBJECT TO GENERAL JURISDICTION IN ARIZONA

In *Daimler AG*, the Supreme Court clarified the scope of general jurisdiction, stating that "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction. *Daimler AG v. Bauman,* 134 S. Ct. 746, 760 (2014) (internal citations omitted). General jurisdiction will lie only where a corporation is "fairly regarded at home," with the paradigm for "at home" being its place of incorporation and principal place of business. *Id.* Thus, except in the "exceptional" case, general jurisdiction over a corporation is limited to its place of incorporation and its principal place of business. *Id.* at n. 19.

Here, Plaintiffs have not alleged facts that support the exercise of general jurisdiction over Rosenbach or ACR in Arizona. Rather, they rely on conclusory allegations (which Rosenbach and ACR dispute), such as that ACR has "contracted with an Arizona Resident" and that ACR "has done and is doing business" in Arizona. (Doc. 1 ¶¶ 20-21). These allegations fail to demonstrate that Rosenbach or ACR have "systematic and continuous" contacts with Arizona, but, even so, *Daimler AG* and *Goodyear* make clear that "systematic and continuous" conduct alone is not enough. Rather, Rosenbach's and ACR's activity in Arizona would have to be "so continuous and systematic" as to render them "at home" in Arizona. *Daimler AG*, 134 S. Ct. at 761; *Goodyear,* 131 S. Ct. at 2851. Plaintiffs' allegations fall far short of this standard.

The facts establish Rosenbach and ACR are not "at home" in Arizona. Rosenbach is a citizen of Florida who resides in Florida.  Doc. 1 ¶ 20.  ACR is a Florida corporation with its

principal place of business in Florida. *Id.* ¶ 21. As such, Rosenbach and ACR are not "at home" in Arizona in the typical sense. Rosenbach and ACR also do not have any offices, facilities, or employees in Arizona; in fact, they are not registered to do business in Arizona at all, and do not have a registered agent here. *See* Ex. A. Accordingly, Rosenbach and ACR are not "at home" in Arizona and, therefore, the Court does not have general jurisdiction over them.

### B.     ACR IS NOT SUBJECT TO SPECIFIC JURISDICTION IN ARIZONA

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851. Thus, a critical element for specific jurisdiction is that the claim arises out of or relates to the defendant's contacts with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). That is, the suit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.

The Court should not assume the truth of the allegations contained in a plaintiff's complaint, particularly where they are controverted by a defendant's affidavit. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Plaintiffs cannot simply rest on the bare allegations of their Complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Even assuming they could, Plaintiffs do not allege any facts that would support specific jurisdiction over Rosenbach or ACR. Plaintiffs vaguely allege Rosenbach and ACR transacted business, committed a tort, and entered into a contract in Arizona. This is controverted by the Declaration of Allen Rosenbach. Plaintiffs do not allege their alleged damages arose out of any business transactions, tortious conduct, or agreement by Rosenbach or ACR in Arizona. None of the conduct alleged against Rosenbach or ACR took place in Arizona. Plaintiffs' claims against Rosenbach and ACR are based on 8-year-old (or more) actuarial reports to one of the other Defendants (from Florida to New York). Rosenbach and ACR did not prepare reports in Arizona, and the Complaint alleges reports were delivered to a New York based law firm on behalf of an insurance company established under the law of St. Kitts. Doc. 1 ¶¶ 7, 61, 108, 174. Plaintiffs do not allege any connection between Rosenbach's

or ACR's conduct and Arizona or that the named Plaintiffs suffered any injury directly from Rosenbach's or ACR's conduct. Without the necessary link between Plaintiffs' claims and Rosenbach's/ACR's forum-related conduct, there is no specific jurisdiction.

The Ninth Circuit employs a three-prong analysis when considering whether specific jurisdiction may exist: (1) whether the non-forum defendant purposefully directed its activities toward the forum, or purposefully availed itself of the benefits of the forum, (2) whether the plaintiff's claims arose out of the defendant's forum-related activities, and (3) whether the exercise of jurisdiction is reasonable under the circumstances. *Schwarzenegger*, 374 F.3d at 802. An affirmative finding as to each of the three elements is required to support specific jurisdiction, and the plaintiff has the initial burden of proving the first two prongs. *Id.*

### 1. No Purposeful Availment

In analyzing purposeful availment, the focus is on whether the non-forum defendant's activities and connection to the forum are sufficient for it to reasonably anticipate that it could be hailed into court to defend in the forum. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559, 567 (1980). The non-forum defendant's own contacts with the forum are at issue, rather than the unilateral activities of others. *Walden*, 134 S. Ct. at 1122. The purposeful availment requirement ensures that jurisdiction is not premised on random, attenuated, or fortuitous contacts with the forum state, or on some unilateral activity of third parties. *J. McIntyre Machinery, Ltd. v Nicastro*, 131 S. Ct. 2780, 2801 (2011). Here, Plaintiffs' vague and conclusory allegations do not come close to making a case that Rosenbach or ACR purposefully availed themselves of the privileges of conducting business in Arizona or that they could anticipate they could be hailed into court in Arizona.

### 2. No Causal Connection.

Further, the Court cannot conclude that Plaintiffs' claims arose out of, or otherwise relate to, any contacts between Rosenbach or ACR and the forum. The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise from the non-forum defendant's contacts with the forum. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th

Cir. 2000), overruled in part on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006). The "but for" test requires "some nexus between the cause of action and the defendant's activities in the forum." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), rev'd on other grounds. The question is whether the plaintiff's cause of action would have arisen "but for" the defendant's forum-related conduct. *Id.* at 385-86. Here, there is no "but for" causation. The actuarial reports were not created in Arizona or sent by Rosenbach or ACR to Arizona. There is no allegation that Plaintiffs would not have done business with the other Defendants but for Rosenbach's or ACR's alleged contact with Arizona. *See, e.g.*, *Haines v. Get Air LLC*, 2017 U.S. Dist. LEXIS 27140, *23-25 (D. Ariz. 2017) (plaintiff could not establish the requisite causal connection where the out-of-state defendant manufactured foam and sold it to a company in Utah, who then sold it to another Utah company, who then sold it to an Arizona company). To the contrary, the Plaintiffs continued to do business with the other Defendants years after the actuarial reports were provided to the Clark Defendants. Doc. 1 at ¶¶ 212-213.

### 3. The Reasonableness Test

Even if a plaintiff proves the first two prongs of the specific jurisdiction test, the Court will refrain from exercising jurisdiction if it would be unreasonable to do so. *See, e.g., Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). The reasonableness factors weigh (1) the extent the non-forum defendant purposefully injected itself into the forum's affairs, (2) the burden on the defendant to defend in the forum, (3) the extent of conflict with the sovereignty of the non-forum defendant's state, (4) the forum's interest in resolving the dispute, (5) the state affording the most efficient resolution of the controversy, (6) the plaintiff's choice of forum, and (7) the existence of an alternative forum. *Id.* The Court need not analyze the reasonableness factors because Rosenbach's and ACR's contacts with Arizona do not meet the purposeful availment or the "but for" prongs. However, even if reasonableness were considered, it would weigh in favor of finding no specific jurisdiction over Rosenbach and ACR.

First, Rosenbach/ACR have not purposefully injected themselves into Arizona affairs.

16

Plaintiffs' suit is premised on alleged conduct by Rosenbach/ACR outside of the forum. Plaintiffs' claims are so attenuated from any alleged conduct by Rosenbach/ACR in Arizona that exercise of personal jurisdiction would be unreasonable. Asserting personal jurisdiction over Rosenbach/ACR in this case would not comport with notions of fair play and substantial justice, because based on their utter lack of contact with Arizona, Rosenbach/ACR should not reasonably expect to be called to defend against claims here. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2183 (1985). Next, Rosenbach/ACR would be burdened by litigating in Arizona because they have virtually no ties to Arizona. Rosenbach is a Florida citizen, and ACR is a Florida corporation with its principal place of business in Florida. Further, records and witnesses relevant to Rosenbach's/ACR's work product are located outside of Arizona. Although there may be similarities in negligence laws from state to state, Florida has the obligation to provide a forum where parties that are "at home" can be sued for any claim. Finally, Florida has general jurisdiction over Rosenbach and ACR. It would be more efficient to litigate the claims against Rosenbach/ACR in Florida. With regard to the existence of an alternate forum, this factor weighs against the exercise of jurisdiction in Arizona. Arizona is *not* the most efficient place to litigate the claims against Rosenbach/ACR. As discussed above, Rosenbach/ACR are subject to general jurisdiction in Florida. The work product was delivered pursuant to Clark Defendants' request in New York.

The only reasonableness factor that favors Plaintiff is Plaintiff's choice of forum. However, this is insufficient to make it reasonable for this Court to exercise personal jurisdiction over Rosenbach or ACR. *See, e.g., Montgomery v. Airbus Helicopters, Inc.*, 414 P.3d 824, 834 (Okla. 2018) (holding that specific jurisdiction could not be asserted over out of state defendants even though the subject helicopter crash happened in Oklahoma, the helicopter took off from a base in Oklahoma, and the two people killed were citizens of Oklahoma).

**V.     CONCLUSION**

For the reasons stated above, Defendants Rosenbach and ACR respectfully request the Court grant their Motion to Dismiss with prejudice as to all of Plaintiffs' claims.

17

DATED this 22nd day of October, 2019.

**THE CAVANAGH LAW FIRM, P.A.**

By: s/John K. Wittwer
 William M. Demlong
 John K. Wittwer
 1850 North Central Avenue, Suite 2400
 Phoenix, Arizona 85004

Attorneys for Defendants John Garcia, In His Capacity as Personal Representative for the Estate Of Craig McEntee; McEntee & Associates P.C.; Allen Rosenbach; and ACR Solutions Group

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2019, the foregoing was filed electronically using the CM/ECF system for filing. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic system. Parties may access this filing through the Court's electronic system.

 s/Cindy Noeding