1    **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Benyamin Avrahami, et al.,              )    No. CV-19-04631-PHX-SPL
                                             )
10                          Plaintiffs,      )    **AMENDED ORDER**[1]
                                             )
11   vs.                                     )
                                             )
12   Celia Clark, et al.,                    )
                                             )
13                          Defendants.      )
                                             )
14                                           )
                                             )
15

16        Before the Court are several motions to dismiss filed by Defendants.[2] For the

17   following reasons, the Complaint (Doc. 1) shall be dismissed without prejudice and

18   Plaintiffs[3] shall have leave to file an amended complaint.

19   **I.    Background**

20        This case arises from Plaintiffs and Defendants creating and operating a

21   _____

22   [1]    This Order amends page 14, line 18 of the March 31, 2020 Order.

23   [2]    Defendants include: Celia Clark and Clark & Gentry, P.L.L.C. (the "Clark
     Defendants"); John Garcia, in his capacity as personal representative for the estate Of Craig
24   McEntee and McEntee & Associates P.C. (the "McEntee Defendants"); Neil Hiller and
     Fennemore Craig, P.C. (the "Hiller Defendants"); Allen Rosenbach and ACR Solutions
25   Group, Inc. (the "ACR Defendants"); Heritor Management, LTD; and Pan American
     Reinsurance Company, LTD (collectively "Defendants"). (Doc. 1)

26
     [3]    The named plaintiffs include: Benyamin Avrahami and Orna Avrahami (the
27   "Avrahami Plaintiffs"); Feedback Insurance Company, LTD ("Feedback"); BYS
     Company, ACC, Chandler One, LLC, Junction Development, LLC, O & E Corporation,
28   White Mountain Equities, L.L.C., and White Knight Investment, A.C.C. (the "Insured
     Plaintiffs") (collectively "Plaintiffs").

"microcaptive insurance company." A microcaptive insurance company is created when the insurer and insured are related by ownership. (Doc. 1 at 23) Under § 831 of the Internal Revenue Code ("IRC"), in a legal microcaptive insurance arrangement, the insurance premiums paid by the insured subsidiaries are tax deductible by both the insurer and the insured, resulting in significant tax savings. (Doc. 1 at 23)

The Avrahami Plaintiffs own several jewelry stores and other properties in Arizona through their corporation American Findings. (Doc. 1 at 25-26) The Insured Plaintiffs are subsidiaries of American Findings. (Doc. 1 at 25-26) In 2007, the Avrahami Plaintiffs consulted with their accounting firm, the McEntee Defendants, about ways to reduce their businesses' tax burdens. (Doc. 1 at 26) The McEntee Defendants recommended the Hiller Defendants and the Clark Defendants to help the Avrahami Plaintiffs save significantly on their taxes.[4] (Doc. 1 at 26) The Avrahami Plaintiffs ultimately retained the Hiller Defendants and the Clark Defendants to help form a microcaptive insurance company. (Doc. 1 at 26-27) In November of 2007, the Avrahami Plaintiffs entered into a retainer agreement by which Celia Clark and Neil Hiller were to act as co-counsel to provide all legal services to form a microcaptive insurance company so that American Findings and the Insured Plaintiffs could receive several tax deductions. (Doc. 1 at 27) The parties created Feedback in 2007. (Doc. 1 at 27) In 2009, Celia Clark began to use the ACR Defendants' actuary services to assess the premiums that needed to be paid by the Insured Plaintiffs in order to adequately spread the risk of Feedback's operation—as required by IRC § 831(b). (Doc. 1 at 31) The Insured Plaintiffs payed insurance premiums to Feedback from 2007-2015. (Doc. 1 at 28) As the overall manager of Feedback's operation, Celia Clark procured Defendant Heritor to manage Feedback during that time. (Doc. 1 at 28) Celia Clark also hired Defendant Pan America to issue premiums to Feedback in order to further "spread the risk" for the microcaptive insurance business. (Doc. 1 at 40-44) However, in May of 2013, the Internal Revenue Service ("IRS") sent Feedback a statutory

---

[4]     Defendants Celia Clark and Neil Hiller are licensed attorneys.

1    notice of deficiency determining that Feedback was not a valid insurance company and that

2    "the amounts characterized as insurance premiums" were really income to Feedback. (Doc.

3    1 at 59) Celia Clark and Neil Hiller advised Plaintiffs that Feedback was operating as a

4    legal entity and that Plaintiffs should challenge the notice of deficiency in federal tax court.

5    (Doc. 1 at 62) Plaintiffs did challenge the notice, and ultimately, the tax court determined

6    that Plaintiffs improperly took several tax deductions and owed over $1 million in back

7    taxes, penalties, and interest. (Doc. 1 at 61-62)

8         On July 3, 2019, Plaintiffs filed this class action lawsuit on behalf of themselves

9    and others, asserting thirteen claims arising from Defendants' creation and management of

10   microcaptive insurance companies. The claims include violations of: the Racketeer

11   Influenced and Corrupt Organizations ("RICO") Act 18 U.S.C. § 1962(c) (Count I);

12   Conspiracy to Violate Federal RICO 18 U.S.C. § 1962(d) (Count II); Arizona RICO A.R.S.

13   § 13-2312 (Count III); Conspiracy to Violate Arizona RICO (Count IV); Breach of

14   Fiduciary Duty (Count V); Negligence/Professional Malpractice (Count VI); Negligent

15   Misrepresentation (Count VII); Disgorgement (Count VIII); Rescission (Count IX);

16   Breach of Contract (or in the alternative) Breach of the Duty of Good Faith and Fair

17   Dealing (Count X); Fraud (Count XI); Aiding and Abetting (Count XII); and Civil

18   Conspiracy (Count XIII). (Doc. 1) Plaintiffs assert that Defendants fraudulently created a

19   scheme to develop, promote, sell, and implement faulty captive insurance products by

20   giving improper legal, tax, and investment advice to individuals and businesses. Plaintiffs

21   allege that the fraudulent scheme caused damages by exacerbating their tax burdens.

22   Defendants have filed a series of motions to dismiss, which are fully briefed and ready for

23   review.

24   **II.    Legal Standard**

25        A complaint must include "a short and plain statement of the claim showing that the

26   pleader is entitled to relief, in order to give the defendant fair notice of what the [] claim is

27   and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

28   (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a). "To survive a

1    motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

2    'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3    (2009) (quoting *Twombly*, 550 U.S. at 570).

4           In addition to the requirements of Rule 8(a), when a plaintiff alleges claims that are

5    rooted in fraud, he or she must comply with the heightened pleading standard of Rule 9(b).

6    *Cafasso, U. S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir.

7    2011). This requires the plaintiff to set forth an explanation as to the "who, what, when,

8    where, and why" of the alleged offenses. *Id.* Pleading "every detail in the execution of the

9    conspiracy is unnecessary to establish liability." *Swartz v. KPMG LLP*, 476 F.3d 756, 764

10   (9th Cir. 2007). However, "Rule 9(b) does not allow a complaint to merely lump multiple

11   defendants together[,] but requires plaintiffs to differentiate their allegations when suing

12   more than one defendant and inform each defendant separately of the allegations

13   surrounding his alleged participation in the fraud." *Id.* at 764-65 (internal quotations and

14   citation omitted).

15   **III.    Discussion**[5]

16          Defendants asserts several different arguments regarding dismissal under Rule

17   12(b). The Court will analyze each motion in turn.

18          **A.     Clark and Hiller Defendants' Motions to Dismiss**

19          The Clark and Hiller Defendants assert similar arguments regarding dismissal of

20   Counts I-IV, VIII, IX, and XI-XIII. Therefore, the Court will analyze the similar arguments

21   together and any remaining arguments by each Defendant separately.

22                 **1.     State and Federal RICO Claims (Counts I-IV)**

23                        **i.     Rule 9(b) Particularity**

24

25   [5]     As an initial matter, the Court acknowledges that the parties have wholly ignored
     the page limit requirements set by the Local Rules when filing their motions and responsive
26   memorandums of law. Both Plaintiffs and Defendants submitted briefing in violation of
     Local Rule 7.2(e) and the Court's Order (Doc. 74). In addition, multiple parties attempted
27   to impermissibly incorporate by reference the arguments made by other parties in this case,
     instead of filing a joint motion. In its discretion, the Court will not order sanctions against
28   the parties at this time. However, the parties are put on notice that failure to adhere to the
     Local Rules and this Court's orders going forward is a sanctionable offense.

4

1          First, the Clark and Hiller Defendants assert that Plaintiffs impermissibly rely on
2    group pleading for their federal and state RICO claims. (Docs. 28 at 1-3; 31 at 11) Second,
3    Defendants argue that Plaintiffs fail to adequately allege facts necessary to establish a
4    RICO enterprise. (Docs. 28 at 9-11; 31 at 10-15) In response, Plaintiffs argue that they do
5    not have to plead their RICO claims under the heightened particularity standard of Rule
6    9(b).  (Doc. 52 at 12) In addition, Plaintiffs assert that they have adequately pled the Clark
7    and Hiller Defendants' role in the alleged RICO enterprise. (Docs. 52 at 12-18; 51 at 19-
8    22)

9          "To state a civil RICO claim under federal law a plaintiff must allege '(1) conduct
10   (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate
11   acts) (5) causing injury.'" *Piper v. Gooding & Co. Inc.,* 334 F.Supp.3d 1009, 1019 (D.
12   Ariz. 2018) (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353,
13   361 (9th Cir. 2005)). Claims under Arizona's RICO statutes are interpreted consistently
14   with the federal RICO statutes. *See Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs.,*
15   *Inc.*, 7 P.3d 158, 162 (Ariz. Ct. App. 2000).

16         First, the Court finds that Plaintiffs' claims for RICO violations are routed in their
17   fraud allegations and are therefore subject to Rule 9(b). *See Schreiber Dist. Co. v. Serv-*
18   *Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). Second, the Court finds
19   that Plaintiffs do not impermissibly rely on group pleading and have sufficiently stated a
20   RICO claim against the Clark and Hiller Defendants. Plaintiffs allege that the Clark
21   Defendants oversaw the creation and management of Feedback as a microcaptive insurance
22   company, continually advised Plaintiffs on the creation and management of Feedback, and
23   was an integral part in the achievement of the alleged RICO enterprise's goal. (Doc. 1 at
24   26-28, 40-44, 47-54, 62, 66, 68, 81) Furthermore, Plaintiffs allege that the Hiller
25   Defendants acted as "a frontline promoter" in inducing Plaintiffs to hire the Clark
26   Defendants and create a microcaptive insurance company, shared in the responsibility of
27   the alleged RICO enterprise as legal counsel to Plaintiffs, and repeatedly misrepresented
28   to Plaintiffs' the expected tax benefits from Feedback. (Doc. 1 at 26-27, 47, 56-57, 62, 67,

82) The Court finds that these allegations are sufficiently specific under Rule 9(b) to state a RICO claim against the Clark and Hiller Defendants under both state and federal law.

### ii.     State RICO: Service to the Attorney General and Verification

The Clark and Hiller Defendants next argue that the state RICO claims must be dismissed because Plaintiffs failed to timely serve the Complaint on the Arizona Attorney General and include a verification with the Complaint as required by A.R.S. § 13-2314.04(H) and (O). (Docs. 28 at 3; 31 at 15-16) In response, Plaintiffs argue that these statutory requirements are procedural in nature and do not apply to cases filed in federal court. (Docs. 51 at 8; 52 at 19)

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). In federal diversity cases, only substantive state law applies to state claims; procedural state law does not. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). It is well-settled in Arizona that A.R.S. § 13-2314.04(H) is procedural in nature, and therefore, the Court finds that it does not bar Plaintiffs' claims. *See Encinas v. Pompa*, 939 P.2d 435, 437 (Ariz. Ct. App. 1997) ("The function served by section 13-2314.04(H) is to regulate the method by which [] substantive rights are enforced. This is the classic definition of a procedural rule."). The Court further finds that A.R.S. § 13-2314.04(O) is also procedural in nature, and conflicts with the express language of Rule 11(a).[6] Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."). Therefore, the Court finds that A.R.S. § 13-2314.04(O) is inapplicable and cannot bar Plaintiffs' claims.

---

[6]     The Clark Defendants urges the Court to adopt an interpretation found in a concurring opinion from the Eleventh Circuit that interprets Rule 11(a) as applying to both federal and state rules and statutes. (Doc. 65 at 10) However, the Ninth Circuit has not adopted such an interpretation and the Court declines to take such a position at this time.

1

2

### 2.      Fraud (Count XI)

The Clark and Hiller Defendants argue that Plaintiffs fail to adequately plead facts establishing common law fraud. (Docs. 28 at 9; 31 at 8-10) Specifically, they argue that Plaintiffs fail to allege each Defendants' individual conduct and their knowledge of their false representations. (Doc. 28 at 10)

To establish common law fraud in Arizona, a plaintiff must prove:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

*Taeger v. Catholic Family and Cmty. Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999) (citation omitted). When pleading fraud with particularity under Rule 9(b), a plaintiff cannot assert that "everyone did everything." *U.S. ex rel. Anita Silingo v. WellPoint, Inc*., 904 F.3d 667, 677-78 (9th Cir. 2018) (citation omitted). However, it is unnecessary for a plaintiff to "distinguish between defendants that had the exact same role in a fraud." *Id.*

In the Complaint, Plaintiffs assert (including dates) that the Clark Defendants made several oral and written misrepresentations regarding the legality of Feedback as a captive insurance company and Feedback's compliance with IRC § 831(b). (Doc. 1 at 47-57)  In addition, Plaintiffs assert (including dates) that the Hiller Defendants made oral and written misrepresentations and omissions that: (1) misstated the tax treatment Plaintiffs would receive under the captive insurance strategies, (2) misrepresented the legality of the insurance provided through the captive insurance companies, and (3) misrepresented that each defendant operated at arm's-length with the other defendants. (Doc. 1 at 56-57) Plaintiffs further allege that the Clark and Hiller Defendants knew that these representations were false when made and Plaintiffs reasonably relied on the representations because Celia Clark and Neil Hiller were acting as Plaintiffs' attorneys at

1    the time. (Doc. 1 at 41, 58, 63, 67) Thus, the Court finds that Plaintiffs have adequately

2    pled their allegations of fraud against the Clark and Hiller Defendants.

3                      **3.       Disgorgement, Rescission, Aiding and Abetting, and Civil**

4                             **Conspiracy (Counts VIII, IX, XII and XIII)**

5            The Clark and Hiller Defendants assert that Plaintiffs' claims for rescission, aiding

6    and abetting, and civil conspiracy are improperly pled. (Docs. 28 at 4-6; 31 at 17-18) They

7    argue that aiding and abetting and civil conspiracy are derivative torts and not stand alone

8    causes of action. (Docs. 28 at 4-6; 31 at 17-18) They also argue that rescission is a legal

9    remedy and not an independent cause of action. (Docs. 28 at 4-6; 31 at 17-18) Furthermore,

10   the Clark Defendants argue that the request for disgorgement is also a legal remedy and

11   cannot be pled as a standalone cause of action. (Doc. 28 at 4-5)

12          In response, Plaintiffs argue that Arizona courts recognize both aiding and abetting

13   (when pled along with an underlying tort) and civil conspiracy (when pled along with an

14   underlying tort) as independent causes of action, and therefore, both are sufficiently pled.

15   (Doc. 51 at 10-11) In addition, Plaintiffs assert that it is unsettled in Arizona whether

16   rescission and disgorgement are remedies or standalone causes of action. (Doc. 51 at 10)

17   Plaintiffs argue that this distinction is immaterial, however, and they are entitled to seek

18   relief under each theory in connection with the facts alleged in the Complaint. (Doc. 51 at

19   10)

20          In Arizona, both aiding and abetting and civil conspiracy are derivative causes of

21   action that first require the finding of an underlying violation. *See Wells Fargo Bank v.*

22   *Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d

23   12, 23, 26-27 (Ariz. 2002). Furthermore, Arizona courts view rescission and disgorgement

24   as civil remedies. *See Cty. of La Paz v. Yakima Compost Co., Inc.*, 233 P.3d 1169, 1189

25   (Ariz. Ct. App. 2010) ("Generally, three remedies are available for a breach of contract:

26   rescission, continued performance, or termination and damages."); *see also Villa v. Villa*,

27   No. 1 CA-CV 15-0099 FC, 2016 WL 6123891, at \*3-4 (Ariz. Ct. App. Oct. 20, 2016)

28   (explaining that disgorgement is a remedy that "focuses on the conduct of the party

required to return the money, not on the benefit to the party receiving the disgorged funds").

The Court finds that Plaintiffs have sufficiently pled each issue in the Complaint. First, Plaintiffs assert an underlying violation of common law fraud and the breach of fiduciary duty as the prerequisite violations for the aiding and abetting claim. (Doc. 1 at 135) Second, Plaintiffs assert common law fraud and RICO as the underlying violations for the civil conspiracy claim. (Doc. 1 at 135-37) Third, Plaintiffs assert the breach of fiduciary duties as the underlying violation in support of its request for disgorgement. (Doc. 1 at 120). Finally, Plaintiffs assert the claim for common law fraud as the underlying violation in support of its request for rescission. (Doc. 1 at 121) Therefore, because the Court will grant Plaintiffs leave to amend the underlying claims in the Complaint (as discussed below), the Court finds that Plaintiffs have adequately alleged aiding and abetting, civil conspiracy, rescission and disgorgement.

### 4.      Clark Defendants: Breach of Contract (Count X)[7]

The Clark Defendants separately argue that the Complaint fails to allege a breach of contract claim against them because Plaintiffs do not allege any specific nonperformance under the retainer agreement. (Doc. 28 at 14) In response, Plaintiffs assert that the Complaint does allege nonperformance under the retainer agreement because the agreement specifically stated that the Clark Defendants would provide services to create an entity that would offer lawful insurance coverage and would legally reduce Plaintiffs' federal and state taxes under IRC § 831(b). (Doc. 51 at 22-23) Plaintiffs assert that the Clark Defendants failed to fulfill both promises because the tax court determined that Plaintiffs did not receive lawful insurance coverage or a legal reduction in their taxes. (Doc. 52 at 22-23)

The Court finds that, taken as true, Plaintiffs have asserted a claim for breach of

---

[7]      The Hiller Defendants argue that Plaintiffs have failed to allege any specific contract between them, and therefore, Plaintiffs cannot establish a breach arising out of any such contract. (Doc. 31 at 16) In response, Plaintiffs concede that the breach of contract claim is not direct at the Hiller Defendants. (Doc. 52 at 20) Therefore, the Court finds that dismissal of Count X is warranted as to the Hiller Defendants.

1
2
3
4
5

contract that is plausible on its face. *See Towns v. Frey*, 721 P.2d 147, 148 (Ariz. Ct. App. 1986) ("If one is going to assert a breach of contract claim against a lawyer, the contract relied upon must itself contain an undertaking to do the thing for the nonperformance of which the action is brought."). Therefore, the Court will not dismiss Count X against the Clark Defendants.

6

**5.      Clark Defendants: Conspiracy Claims (Counts IV and XIII)**

7
8
9
10

The Clark Defendants argue that Plaintiffs' claim for civil conspiracy is duplicative of their claim under Arizona's RICO statute and therefore Count IV should be stricken. (Doc. 28 at 3) In response, Plaintiffs assert that the claims are similar but distinct causes of action. (Doc. 51 at 9-10)

11
12
13
14
15
16
17
18
19

The Complaint alleges that the statutory claim for civil conspiracy arises from A.R.S. § 13-2314.04. (Doc. 1 at 106) However, unlike 18 U.S.C. § 1962(d), A.R.S. § 13-2314.04 does not include any express language creating liability for conspiracy to violate Arizona's RICO statute, A.R.S. § 13-2312. Instead, the definition of "racketeering" as described in A.R.S. § 13-2312 includes "any preparatory or completed offense" in furtherance of a § 13-2312 violation. *See* A.R.S. § 13-2301(D)(4). The Court finds that because preparatory offenses are included under A.R.S. § 13-2312, Plaintiffs do not and cannot state a separate claim for any statutory conspiracy to violate § 13-2312. Therefore, Count IV fails to state a claim as a matter of law and shall be dismissed with prejudice.

20

**6.      Clark Defendants: Breach of Fiduciary Duty (Count V)**

21
22
23
24

The Clark Defendants next assert that Plaintiffs improperly group plead their claim for breach of fiduciary duty in violation of Rule 9(b). (Doc. 28 at 12) In response, Plaintiffs assert that Rule 9(b) is satisfied because they allege the existence of an attorney-client relationship with Celia Clark and a breach of that relationship. (Doc. 51 at 18)

25
26
27
28

In Count V of the Complaint, Plaintiffs generally allege that all the Defendants were fiduciaries of Plaintiffs "as the insurance, tax, legal, financial, and investment advisors of Plaintiffs and the members of the Class." (Doc. 1 at 108) The Complaint also generally alleges the duties required under a fiduciary relationship. (Doc. 1 at 108) However, the

Court finds that the Complaint does not adequately describe the relationship between each individual Defendant and the Plaintiffs and how that relationship formed a fiduciary duty. For example, the Complaint does not assert any facts showing that the ACR Defendants, Heritor Management, or Pan American Reinsurance Company served as direct advisors to Plaintiffs, and the Complaint does not otherwise allege a different kind of fiduciary relationship between those Defendants and Plaintiffs. Therefore, the Court finds that Plaintiffs' claim for breach of fiduciary duty against all Defendants is overly broad in violation of Rule 9(b) and Count V will be dismissed without prejudice. *See In re Daisy Syst. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996) (explaining that the existence of a fiduciary relationship is normally a question of fact which turns on the particular facts and circumstances of the relationship at issue). The Court further finds that granting leave to amend the Complaint is warranted in this case. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

### 7.    Clark Defendants: Professional Malpractice (Count VI)

The Clark Defendants argue that Plaintiffs fail to adequately plead a claim for negligence/professional malpractice. (Doc. 28 at 16) The Clark Defendants again assert that Plaintiffs impermissibly lump all Defendants together and fail to distinguish between their differing relationships with Plaintiffs. (Doc. 28 at 16) In response, Plaintiffs assert that they have adequately pled their claim for professional malpractice. (Doc. 51 at 23-24) Plaintiffs argue that they need only show "the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession." (Doc. 51 at 24)

To withstand dismissal of a professional malpractice claim, a plaintiff must allege that the defendant provided a specified professional service that created a duty to satisfy a standard of care under tort law. *See Marshall v. Galvanoni*, No. 2:17-cv-00820-KJM-CKD, 2017 WL 5177764, at *6 (E.D. Cal. Nov. 8, 2017) (citing *In re Daisy Sys. Corp.*, 97 F.3d at 1175).

In Count VI of the Complaint, Plaintiffs generally allege that all the Defendants had

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a duty "to comply with the applicable standards of care and the applicable provisions of their codes of professional responsibility." (Doc. 1 at 116) The Court again finds that the Complaint does not adequately describe the relationship between each individual Defendant and Plaintiffs and how the nature of the relationship imposed a specific duty of care on each Defendant. Therefore, the Court finds that Plaintiffs' claim for professional malpractice is overly broad in violation of Rule 9(b), and Count VI shall be dismissed without prejudice.

### 8. Clark Defendants: Negligent Misrepresentation (Count VII)

Finally, the Clark Defendants argue that Plaintiffs impermissibly lump Defendants together and fail to allege which Defendants made false representations under Count VII. (Doc. 28 at 17) In response, Plaintiffs argue that they have pled in great detail the false representation made by each Defendant and why those representations were false. (Doc. 51 at 24)

The Complaint alleges in several places specific false representations, misstatements of material fact, and omissions of material fact that each Defendant made throughout Plaintiffs' creation and implementation of Feedback as a microcaptive insurance company. (Doc. 1 at 31-44, 47-58, 81-82, 88-94) Plaintiffs further allege why these representations are false. (Doc. 1 at 31-44, 47-58, 81-82, 88-94) The Court finds that Plaintiffs have sufficiently alleged a claim for negligent misrepresentation and apprised each applicable Defendant of their part in making the allegedly false representations. Therefore, Count VII will not be dismissed.

### B. ACR Defendants' Motion to Dismiss

The ACR Defendants argue that: (1) the Complaint fails to state any claim against them; (2) the statute of limitations has expired on all the claims asserted against them; and (3) Plaintiffs failed to establish personal jurisdiction over them. (Doc. 59)

### 1. Rule 12(b)(6) Failure to State a Claim

The ACR Defendants argue that the Complaint fails to state any claim against them and only asserts legal conclusions. (Doc. 59 at 5) In response, Plaintiffs assert that the ACR

1    Defendants participated in the RICO enterprise by working with the Clark Defendants to

2    intentionally "reverse-engineer" the premium prices on Plaintiffs' insurance policies. (Doc.

3    75 at 11) Plaintiffs further assert that the ACR Defendants knowingly participated in the

4    fraudulent scheme by sending the Clark Defendants emails containing misrepresentations

5    and omissions regarding Feedback's insurance policies and pricing, knowing that Plaintiffs

6    would rely on the information. (Doc. 75 at 13) Finally, Plaintiffs allege that the ACR

7    Defendants worked almost exclusively with the Clark Defendants over several years. (Doc.

8    1 at 31-40)

9           The Court finds that Plaintiffs' allegations against the ACR Defendants do support

10   a claim for RICO violations (Counts I-IV) and fraud (Count XI). However, the Court finds

11   that Plaintiffs fail to state a claim for breach of fiduciary duty, professional malpractice,

12   disgorgement, and breach of contract (Counts V, VI, VIII, and X). Importantly, as

13   discussed above, Plaintiffs fail to allege an underlying contractual relationship or other

14   direct relationship with the ACR Defendants. Therefore, the Court will dismiss Counts V,

15   VI, VIII, and X as to the ACR Defendants without prejudice.

16                            **2.      Statute of Limitations**

17          The ACR Defendants assert that the longest applicable limitations period in this

18   case is six years pursuant to A.R.S. § 12-548. (Doc. 59 at 11) The ACR Defendants argue

19   that the limitations period began to run against them in May of 2013, when the IRS sent

20   Plaintiffs the first notice of deficiency determining that Feedback was not a valid insurance

21   company. (Doc. 59 at 11) The ACR Defendants argue that Plaintiffs fail to allege any

22   reasons why the limitations period should be tolled or continued. (Doc. 59 at 11)

23          In response, Plaintiffs argue that the limitations period has not expired. Citing

24   *Coulter v. Grant Thronton, LLP,* 388 P.3d 834 (Ariz. Ct. App. 2017), Plaintiffs argue that

25   they reasonably believed that the limitations period did not begin to run until August of

26   2017 when the tax court entered a final judgment on Plaintiffs' claims. (Docs. 1 at 62-63;

27   75 at 24-25) Plaintiffs assert that, pursuant to the discovery rule, the limitations clock did

28   not begin until the tax court entered its final judgment. (Doc. 75 at 24-25)

13

In the Complaint, Plaintiffs assert that after the IRS sent the first notice of deficiency in May of 2013, the Clark and Hiller Defendants assured Plaintiffs that the deficiency was an error and Feedback was a legal entity. (Doc. 1 at 59) Relying on this assurance, Plaintiffs challenged the deficiency notice in tax court. (Doc. 1 at 62-65) Plaintiffs ultimately lost the challenge and were assessed over $1 million in taxes, penalties and interest in August of 2017. (Doc. 1 at 61-63) The Complaint was filed six years and two months after the first notice of deficiency was sent, but less than two years from the date of the final tax order. (Doc. 1)

The Court finds that *Coulter* is applicable to the claims against the ACR Defendants because, like the plaintiff in *Coulter*, Plaintiffs allege that they reasonable relied on the assurances made by the Clark and Hiller Defendants throughout the tax court proceedings. (Doc. 75 at 24-25) Plaintiffs assert that because of this, they were not put on notice of any claims against any of the Defendants until the tax court issued a final order. The Court finds that, because the Clark and Hiller Defendants (acting as Plaintiffs' attorneys) made repeated assurances that that the ACR Defendant's services were legal, the fact-based inquiry to the discovery rule (as defined in *Coulter*) is applicable to the ACR Defendants. Therefore, Plaintiffs' claims are not time barred under A.R.S. § 12-548.

### 3.    Jurisdiction

Finally, the ACR Defendants argue that the Complaint must be dismissed because Plaintiffs fail to establish personal jurisdiction against them. (Doc. 59 at 11-17) The ACR Defendants assert that they are not subject to general jurisdiction in Arizona and Plaintiffs cannot establish specific jurisdiction. (Doc. 59 at 13-17) The ACR Defendants further assert that the Court should not grant leave to conduct discovery on the issue of jurisdiction because such discovery would be futile. (Doc. 79 at 16)

In response, Plaintiffs argue that the Court has personal jurisdiction via the federal RICO statutes.[8] (Doc. 75 at 27-30) Plaintiffs also argue that they have made a prima facie

---

[8]    "In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any

showing of specific jurisdiction under the "effects test." (Doc. 75 at 27-30) Alternatively, Plaintiffs motion the Court to allow the parties to engage in limited discovery for the purpose of establishing personal jurisdiction. (Doc. 76)

Because the Court finds that Plaintiffs have adequately pled a federal RICO claim against the ACR Defendants, the Court finds that Plaintiffs have established personal jurisdiction (and thereby supplemental jurisdiction) pursuant to 18 U.S.C. § 1965(b). Therefore, the Court will deny Plaintiffs' motion to conduct jurisdictional discovery.

### C.     McEntee Defendants' Joinder in Motions to Dismiss

On September 6, 2019, the McEntee Defendants filed a Joinder to the Clark and Hiller Defendants' Motions to Dismiss. (Doc. 36) In response, Plaintiffs argue that the joinder is untimely and should be stricken. (Doc. 53 at 8) Specifically, Plaintiffs argue that the time for the McEntee Defendants to file a responsive pleading expired on August 30, 2019. (Doc. 53 at 8) In addition, Plaintiffs argue that the McEntee Defendants have already answered the Complaint without asserting any argument for dismissal, and therefore, any requests for dismissal under Rule 12(b) have been waived. (Doc. 53 at 8-9) Plaintiffs do conceded that the McEntee Defendants may still file a Rule 12(c) motion. (Doc. 53 at 8)

The Court finds that the McEntee Defendants' joinder is untimely. Therefore, the Court will strike the joinder. However, to the extent that Plaintiffs' amended complaint changes the allegations made against the McEntee Defendants, they are free to request leave to amend their answer. Otherwise, the Court will grant the McEntee Defendants leave to file a Rule 12(c) motion once Plaintiffs have filed an amended complaint. Accordingly,

**IT IS ORDERED** that, for the reasons stated above, the Clark Defendants' Motion to Dismiss and Strike (Doc. 28) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, the Hiller Defendants' Motion to Dismiss (Doc. 31) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, the ACR

---

other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." 18 U.S.C. § 1965(b).

Defendants' Motion to Dismiss (Doc. 59) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, the McEntee Defendants' Joinder (Doc. 36) is **stricken** as untimely. The McEntee Defendants shall have leave to amend their answer and/or file a Rule 12(c) motion within **fourteen (14) days** of Plaintiffs filing an amended complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Take Jurisdictional Discovery (Doc. 76) is **denied.**

**IT IS FURTHER ORDERED** that the Complaint (Doc. 1) is **dismissed without prejudice**. Plaintiffs shall have **thirty (30) days** from the date of this Order to file an amended complaint. If no amended complaint is filed within 30 days, the Clerk of the Court shall, without further Court order, dismiss this case with prejudice.

Dated this 8th day of May, 2020.

Honorable Steven P. Logan
United States District Judge

16